# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ANGEL ARBOLAY, )
                                    )
       Defendant-Below/Appellant, )
                                    )
               v.                       )
                                    )    No. 1808009995
STATE OF DELAWARE, )
                                    )
       Plaintiff-Below/Appellee. )
                                    )

Submitted: January 9, 2020
Decided: May 28, 2020

*On Appeal from the Court of Common Pleas of the State of Delaware*
**AFFIRMED.**

## ORDER

Meryem Y. Dede, Esquire, Assistant Public Defender, 900 N. King Street, 2nd Floor, Wilmington, DE 19801; Attorney for Defendant-Below/Appellant Angel Arbolay.

Christina M. Davis, Esquire, Deputy Attorney General, Delaware Department of Justice, Carvel Office Building, 820 N. French Street, 5th Floor, Wilmington, DE 19801, Attorney for Plaintiff-Below/Appellee State of Delaware.

**WHARTON, J.**

This 28th day of May, 2020, upon consideration of the parties' briefs and the record in this matter, it appears to the Court that:

1.      Defendant-Below/Appellant Angel Arbolay ("Arbolay") was arrested in August of 2018 during an investigation of another individual who was on probation.[1] Law enforcement officers observed that probationer enter and leave a Wilmington home.[2]    Suspicious that the probationer had engaged in a drug transaction while in the home, Off. Brian Vettori questioned him.[3] The probationer told Off. Vettori that the Wilmington home was his residence.[4] Off. Vettori testified that when he knocked on the door of the residence, it was unlocked and swung partially open, catching on a chain latch.[5] After announcing himself, Off. Vettori observed Arbolay fumbling in the front of his pants as he ran past the door and into the bathroom.[6] At this time, Off. Vettori forced the door open with his shoulder and ran to the bathroom demanding that Arbolay stop and identify himself. Off. Vettori testified that Arbolay then "took a fighting stance."[7] Off. Vettori tackled Arbolay onto the toilet causing it to break. The ceramic toilet was shattered, resulting in

---

[1] Trial Tr. at 57-58.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] Trial Tr. at 69-70.
[6] Trial Tr. at 59.
[7] *Id.* at 61-62; 75.

injury to both Arbolay and Off. Vettori.[8]  The homeowner, who was present, witnessed the encounter, which lasted approximately less than 10-seconds.[9]  He testified that Arbolay was already in the bathroom when the officer broke through the door and that he did not see the interaction between Off. Vettori and Arbolay in the bathroom.[10]

2.  On July 10, 2019, Arbolay was tried by a jury in the Court of Common Pleas and convicted of resisting arrest.[11]  He now appeals that conviction raising three issues in this Court.[12]  Arbolay contends that the trial court erred by: (1) denying his motion to compel the production of police video recording policies; (2) denying his request to cover his facial tattoos at trial; and (3) excluding testimony regarding the legality of the entry into the residence where Arbolay was arrested and instructing the jury to disregard the legality of the entry.[13]  For the reasons set out below, the trial court neither erred as a matter of law nor abused its discretion. Accordingly, the judgment of the Court of Common Pleas is **AFFIRMED**.

---

[8] *Id.* at 62.
[9] *Id.* at 101, 107-110.
[10] *Id.* at 101, 107-110.
[11] Opening Br. at 1.
[12] *Id.* at 2.
[13] *Id.*

3. The Superior Court is authorized to consider appeals from the Court of Common Pleas in criminal matters.[14] When reviewing decisions of the Court of Common Pleas, this Court sits as an intermediate appellate Court whose function on such appeals mirrors that of the Supreme Court of Delaware.[15] In considering an appeal from the Court of Common Pleas to the Superior Court, the Superior Court determines whether there is legal error and whether the factual findings made by the trial judge are sufficiently supported by the record.[16] This Court reviews such findings for an abuse of discretion; the lower court's factual findings will be upheld if such findings are not "clearly erroneous."[17] Moreover, this Court will accept the factual findings of the Court of Common Pleas if the findings are "sufficiently supported by the record and are the product of an orderly and logical deductive process."[18] If the factual findings of the Court of Common Pleas are so supported,

---

[14] 11 *Del. C.* § 5301(c).

[15] *See State v. Richards*, 1998 WL 732960, *1 (Del. Super. Ct. 1998); *DiSabatino v. State*, 808 A.2d 1216, 1220 (Del. Super. Ct. 2002). *See also Casey v. State*, 2000 WL 33179628, *2 (Del. Super. Ct. 2000) ("When reviewing an appeal from the Court of Common Pleas, this Court assumes the same appeal posture as that of the Supreme Court.").

[16] *Onkeo v. State*, 957 A.2d 2, at *1 (Table) (Del. 2008).

[17] *See, e.g., Lopez-Vazquez v. State*, 956 A.2d 1280, 1285 (Del. 2008) ("To the extent the trial judge's decision is based on factual findings, we review for whether the trial judge abused his or her discretion in determining whether there was sufficient evidence to support the findings and whether those findings were clearly erroneous.").

[18] *Oneko*, at *1 (Del. 2008).

such findings must be accepted by this Court, "even if, acting independently, it would have reached a contrary conclusion."[19]  Legal questions are reviewed *de novo*.[20]

4.  Arbolay contends that the trial court erred by denying his Motion to Compel the production of police video recording policies.  On April 16, 2019, the trial court heard oral argument on Arbolay's motion seeking production of police policies regarding body worn cameras ("BWC") and mobile recording devices ("MVR").[21]  At issue was the relevance of the polices since Arbolay conceded that there was no video evidence of the arrest.[22]  Arbolay argued that the policies were

---

[19] *Id*.; *see also State v. Ministero*, 2006 WL 3844201, *5 (Del. Super. Ct. 2006) ("Regardless of whether this Court would have ruled in the same fashion, because the record supports the trial court's decision that the test performed by the trooper did not clearly comply with requirements of the NHTSA standards, the trial court's assessment of the weight to give the HGN test results based on the testing conditions must be accepted by this Court, as it was not clearly erroneous."); *Steelman v. State*, 2000 WL 972663, *1 (Del. Super. Ct. 2000) ("When addressing appeals from the Court of Common Pleas. . .the [Superior Court's] role is to 'correct errors of law and to review the factual findings of the court below to determine if they are sufficiently supported by the record and are the product of an orderly and logical deductive process.'"); *State v. Karg*, 2001 WL 660014, *1 (Del. Super. Ct. 2001) ("When the factual findings of the court below are sufficiently supported by the record and are the product of an orderly and logical deductive process, they must be accepted notwithstanding the fact that the Superior Court may have reached opposite conclusions.").

[20] *DiSabatino v. State*, 808 A.2d 1216, 1220 (Del. Super. 2002).

[21] Answering Br. at Exhibit A (Tr. Motion to Compel Proceeding).

[22] *Id*. at 8 (Tr. Motion to Compel argument).

exculpatory and relevant for jury consideration if the police should have recorded the arrest and a video should have existed.[23] Additionally, Arbolay supplied several news articles regarding the policies and the use of BWC and MVR by Delaware law enforcement officers.[24] Under Court of Common Pleas Criminal Rule 16(a)(1)(C), the State is required to permit a defendant to inspect and copy documents within the State's possession or control which are material to the preparation of the defendant's defense.[25] The trial court denied the motion reasoning that although the policies were "relevant and not unreasonable in the big picture," since none of the arresting officers wore body cameras, "the policy behind their use, who gets them, when they're turned on, when they're turned off, their preservation, [and] their recording" was not relevant to Arbolay's trial.[26]

5.     Arbolay submits on appeal that the policies could have revealed grounds for a *Deberry*[27] jury instruction had the police been required under their policy to "[turn] on their cameras during Arbolay's arrest."[28] Yet, the fact is none of the arresting officers had been issued body cameras. Whatever the policies were, they were irrelevant since the officers had no body cameras. Further, since there

---

[23] *Id*.
[24] *Id*.
[25] Ct. Com. Pl. Crim. R. 16.
[26] *Id*. at 11.
[27] 457 A.2d 744 (Del. Jan. 27, 1983).
[28] Opening Br. at 12.

were no recordings, there could be no *Deberry* violation for failing to preserve the non-existent recordings. Therefore, the Court finds no error in the trial court's decision denying the motion.

6. The Court turns next to Arbolay's contention that the trial court violated his due process rights under the 14th and 5th Amendments of the United States Constitution and under § 7 of the Delaware Constitution when it denied his request to cover his facial tattoos with ordinary make-up. After Arbolay failed to provide any binding case law, the trial court, exercising its discretion, denied Arbolay's request to cover his tattoos with make-up.[29] The Department of Corrections ("DOC") had originally denied Arbolay's request out of an abundance of caution.[30] The trial court upheld the DOC's decision, reasoning that Arbolay's facial tattoos did not prejudice him at trial. First, the trial court noted that the jury would be unable to determine what Arbolay's tattoos depicted.[31] Second, the trial court noted that none of the witnesses needed to discuss his facial tattoos because identity was not at issue and, therefore, the trial court instructed the State's witnesses not to identify Arbolay by his tattoos.[32] Finally, the trial court noted that at the time

---

[29] Trial Tr. at 29-33.
[30] Specifically, DOC was concerned about Arbolay altering his appearance should he attempt to escape during trial.
[31] Trial Tr. at 29-33.
[32] *Id*.

of trial, tattoos were "incredibly prevalent in society" such that there was not enough stigma of "even face tattoos" to create prejudice.[33]  On appeal, Arbolay claims that his teardrop tattoos were inherently prejudicial and carried a criminal stereotype.[34]  He relies on two Delaware cases: *State v. White*,[35] where this Court recognized that evidence of tattoos can be prejudicial, and *Michael v. State*,[36] where the Delaware Supreme Court held that a weekend break did not decrease the effectiveness of the trial judge's curative instruction when a witness identified a defendant's teardrop tattoo at trial.[37]

7.     The issue here is whether the trial court's determination that Arbolay did not suffer prejudice violated his due process rights.  So, what did the trial court do?  The trial court judge, who was able to see the layout of the courtroom, made a factual determination that the jury could see that Arbolay had facial tattoos—but not what those tattoos were.  That finding was a factual determination that this Court will not disturb unless the record shows that the decision was "clearly erroneous."  Before the Court, are pictures of Arbolay's tattoos as they were the day of trial and the trial transcript where the trial court judge notes that the jury could not make out

---

[33] *Id.*
[34] Opening Br. at 15.
[35] 2017 WL 3084711 at *6 (Del. Super. Ct. July 20, 2017).
[36] 970 A.2d 223, 228 (Del. 2009).
[37] Opening Br. at 16-17.

what his tattoos were "in any detail" from where both he and the jury were positioned.[38]  Trial counsel for Arbolay noted that if Arbolay testified he would be closer to the jury.[39]  But Arbolay did not testify, and the record sufficiently supports the trial court's determination that the jury could not make out the details of Arbolay's facial tattoos.  Arbolay does not argue actual prejudice, and the Court finds that the trial court's instruction to the State's witnesses not to identify Arbolay by his tattoos was enough to avoid any potential prejudice.  The trial court did not abuse its discretion.

8.      Finally, Arbolay claims that the trial court erred when it excluded testimony regarding the legality of the entry into the residence and instructed the jury to disregard the legality of the entry.  Because Arbolay was charged with and convicted of resisting arrest and it is illegal to resist even an illegal arrest, the trial court neither abused its discretion nor erred as a matter of law.

**NOW THEREFORE**, the judgment of the Court of Comment Pleas is **AFFIRMED.**

**IT IS SO ORDERED**.

/s/ *Ferris W. Wharton*
**Judge**

---

[38] Trial Tr. at 31-32.
[39] Trial Tr. at 32.